**THE UNITED STATES
DISTRICT COURT
FOR THE WESTERN DISTRICT
OF NORTH CAROLINA**
**401 West Trade Street, Room 210
Charlotte, NC 28202**

FILED
CHARLOTTE, NC

MAY 0 8 2018

US District Court
Western District of NC

BRIANNE STEPHENS,
T S S, minor,D S, minor
And D G S, minor Brought by mother
and next friend BRIANNE STEPHENS
and on behalf of all others similarly situated,

**PLAINTIFF(S)**

-v-

STATE OF NORTH CAROLINA,

OFFICE OF THE ATTORNEY GENERAL OF
STATE OF NORTH CAROLINA;

JOSHUA STEIN
in his official and individual capacity;

NORTH CAROLINA ADMINISTRATIVE
OFFICE OF THE COURTS;

NORTH CAROLINA JUDICIAL BRANCH of
MECKLENBURG COUNTY SUPERIOR COURT;

HON MARK MARTIN
in his official and individual capacity;

HON GARY L. HENDERSON,
in his official and individual capacity as Judge of the
Mecklenburg County District Court;

ASSOCIATION OF FAMILY AND CONCILIATION COURTS
(AFCC);

PETER SALEM
in his official and individual capacity;.

**Civil Action No :** 3:18CV72

CIVIL RIGHTS ACTION, THE
AMERICANS WITH
DISABILITIES AMENDED
ACT SECTION 504 OF THE
REHABILITATION ACT OF
1973
FEDERAL QUESTION AND
DIVERSITY.

**File in association with**
DISTRICT OF OREGON DONJA BUNNEL
V THE STATE OF OREGON ET
AL 3:17 –CV-1786 (SI)

MIDDLE DISTRICT OF ALABAMA
MIRANDA MITCHELL V THE STATE OF
ALABAMA ET AL 2:17-CV-00768 (WC)

FEDERAL DISTRICT OF CONNECTICUT
SUSAN SKIPP ET AL. V THE STATE OF
CONNECTICUT 3:17-CV-1974 (VB)

DISTRICT OF NEW JERSEY KAREN
WOLF ET AL V STATE OF NEW JERSEY
ET AL 2:2017-cv-02072

WESTERN DISTRICT OF OKLAHOMA
COURT LISA KNIGHT ET AL V THE
STATE OF OKLAHOMA ET AL 17- cv 1250
(VML) (GP)

NORTHERN DISTRICT OF CALIFORNIA
MELISSA BARNETT ET AL V THE STATE
OF CALIFORNIA ET AL 17-CV-05514 (SI)

NORTHERN DISTRICT OF CALIFORNIA
FLORENCE BOYER ET AL V THE STATE
OF CALIFORNIA ET AL 17-CV- 06063
(YGR)

**SEE ATTACHED**

COUNCIL FOR CHILDREN'S RIGHTS (CFCR);
In business capacity

BOB SIMMONS,
in his official and individual capacity;.

LESLEY E GARAFOLA,
in her official and individual capacity;

SMITH MOORE LEATHERWOOD ,
in business capacity;

JOHN PHILLIP ZIMMER,
in his official and individual capacity;

JOHN PARKER,,
 in his official and individual capacity;

SHANTRELL G. WILLIAMS,
in her official and individual capacity;

PEGGY THIES,
in her official and individual capacity;

PATRICIA ANN TUTONE ,
in her official and individual capacity;

MILLER BOWLES LAW FIRM,
In its business capacity;

BRETT CHRISTOPHER HOLLADAY,
in his official and individual capacity;

ANN ROSE MARIE JOHNSON LEWIS LAW FIRM, PLLC,
In its business capacity;

ANN ROSE MARIE JOHNSON LEWIS,
in her official and individual capacity;

CAROLINA HEALTHCARE SYSTEM BEHAVIORAL HEALTH,
in its business capacity;

CRYSTAL ROSE BULLARD,

in her official and individual capacity;

SHEUNESS CUTHBERTSON,
in her official and individual capacity;

CENTER FOR CREATIVITY & HEALING, PC,
in its business capacity;

MARIE CURRAN,
in her official and individual capacity;

SHERRY LYERLY-TARNER, MS, LPCA,
in her official and individual capacity;

MECKLENBURG COUNTY DEPARTMENT OF SOCIAL SERVICES
CHILD PROTECTIVE SERVICES;(DSS) (CPS)
In its business capacity

LASHONDA GREENE,
in her official and individual capacity;

**DEFENDANTS**

## AMENDED COMPLAINT

1. Plaintiffs BRIANNE STEPHENS alleges the following:

### INTRODUCTION

2. BRIANNE STEPHENS, T.S S, D S, and D G S each a qualified individual with disabilities,

(collectively, "Plaintiffs"), bring this complaint against the above-named Defendants State of

NORTH CAROLINA, et al. (collectively "Defendants"), who are public and/or private entities.

From 2014 – present, Defendants have <u>regarded</u> Plaintiffs as having a mental impairment called

PAS, and depression and regarded T.SS, D.S. depression, anxiety and discriminated against

Plaintiffs according to these perceived mental impairments called parental alienation. Defendants

acted on assumptions and sex-based stereotypes about Plaintiffs' disabilities; and failed to individually analyze what services and supports would be appropriate considering those disabilities. Defendants refused to provide appropriate individualized treatment and accommodations necessary to ensure that Plaintiffs had full and equal opportunity to court proceedings to which BRIANNE STEPHENS parental rights and children's custody were at issue. Moreover, Defendants exploited Plaintiffs' disabilities.

3.  Defendants' actions, inactions, and omissions here violate Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35; Title III of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12181 *et seq.*, and its implementing regulation at 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

4.  Plaintiffs do not challenge or appeal a lawful State court decision. Plaintiffs challenge the lack of administrative safeguards and obligations required by the American with Disabilities Act as amended and Sec 504 of the rehabilitation act of 1973.

5.  These administrative failings resulted in the abborgations of Plaintiffs' 14 Amendments Rights.

6.  This matter raises an issue of general public importance."From the Public Health Perspective.

7.  In the judicial system, a norm is established against discrimination on the basis of disability tying law closely to public health.1 Thus, it would seem that justice and public health in many ways are interdependent. However, public health and law are separate disciplines, and as Wendy Parmet, a leading expert on health, disability, and public health law puts it, "The legal perspective contrasts dramatically with a public health population perspective. Legal reasoning tends to rely on analogy and deductive application of rules to facts. Public health works from empirical evidence and probabilistic reasoning." Including persons with disabilities providing equal stance in courts of law necessitates a blueprint that avoids exploitation of disabilities due to legal adversarial tactics"

## **PARTIES**

8. The United States has an Interest herein; This Case Is Of Imperative Public Importance ;

9. Plaintiff, BRIANNE STEPHENS resides in MATTHEWS, NC 28104. is a 51 year old woman with disabilities and regarded as having disabilities she does not have.

10. Plaintiffs, T S S,D S, ANDD G S are three minor individuals who are the children of BRIANNE STEPHENS and are persons regarded as having disabilities.

11. Defendant, STATE OF NORTH CAROLINA et al, including its respective departments, agencies, and other instrumentalities, is a unit of local government in the State of North Carolina, is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and is subject to the ADA and its implementing regulation. It is a recipient of federal financial assistance.

12. Defendant, NORTH CAROLINA JUDICIAL BRANCH including its respective departments, agencies, and other instrumentalities, is a unit of local government in the State of North Carolina, is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and is subject to the ADA and its implementing regulation. It is a recipient of federal financial assistance.

13. Defendant, CHIEF JUSTICE Mark Martin, ID in the Supreme Courts of NC in his leadership role as the administrator and manager of NC's system, its courts, officers, and related offices and programs. It is a recipient of federal financial assistance. It is located PO Box 1841 Raleigh, NC 27602 He is being sued in his individual and official capacities

14. Defendant, ATTORNEY GENERAL of NC JOSHUA STEIN in his leadership role as the administrator and manager of NC's system, its courts, officers, and related offices and programs. is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations It is a recipient of federal financial assistance. It is located P.O.Box 629, Raleigh, NC 27602-0629 He is being sued in his individual and official capacities.

15. Defendant, ATTORNEY GENERAL OFFICE of NC in his leadership role as the administrator and manager of NC's system, its courts, officers, and related offices and programs. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations It is a recipient of federal financial assistance. It is located P.O.Box 629, Raleigh, NC 27602-0629 He is being sued in official capacity.

16. DEFENDANT, HON GARY L HENDERSON was the Presiding Judge of the NC DISTRICT COURT DIVISION FOR THE 26TH JUDICIAL DISTRICT in MECKLENBURG COUNTY, NC at the time of the events complained of herein.He is a recipient of federal financial assistance. He is located at District Court(26) 832 East 4th Street, Suite 9600 Charlotte, NC 28202 He is being sued in his official and individual capacity.

17. Defendant, BRETT CHRISTOPHER HOLLADAY, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. He is a recipient of federal financial assistance. He is located at 508 East Boulevard Charlotte, North Carolina 28203. He is being sued in his official and individual capacity.

18. Defendant, MILLER BOWLES LAW FIRM is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. It is a recipient of federal financial assistance. Located at 508 East Boulevard Charlotte, North Carolina 28203. He is being sued in his business capacity

19. Defendant, ANN ROSE MARIE JOHNSON LEWIS, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located 101 N. MCDOWELL STREET, SUITE 226, CHARLOTTE, NC 28204 She is being sued in her official and individual capacities.

20. Defendant, ~~ANN ROSE MARIE~~ JOHNSON LEWIS LAW FIRM, PLLC is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located 101 N. MCDOWELL STREET, SUITE 226, CHARLOTTE, NC 28204 She is being sued in her business capacity.

21. Defendant, PEGGY THIES, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located 601 East Fifth Street Suite 510 Charlotte, NC 28202. She is being sued in her official and individual capacities.

22. DEFENDANT LASHONDA GREENE She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is

subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located 301 Billingsley Rd, Charlotte, NC 28211. She is being sued in her official and individual capacities.

23. Defendant, SHANTRELL G, WILLIAMS, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located 601 East Fifth Street Suite 510 Charlotte, NC 28202. She is being sued in her official and individual capacities.

24. Defendant, PATRICIA ANN TUTONE, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located 601 East Fifth Street Suite 510 Charlotte, NC 28202. She is being sued in her official and individual capacities.

25. Defendant, JOHN PHILIP ZIMMER, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. He is a recipient of federal financial assistance. He is located 101 N. Tryon Street Suite 1300 Charlotte NC 28246. He is being sued in his official and individual capacities.

26. Defendant, ROBERT W SIMMONS, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. §

12181(1); and is subject to the ADA and its implementing regulations. He is a recipient of federal financial assistance. He is located 601 East Fifth Street Suite 510 Charlotte NC 28202. He is being sued in his individual and official capacities.

27. Defendant, JOHN J.PARKER, is an independent attorney, member of the NC Bar Association and Mecklenburg County Bar Association. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. He is a recipient of federal financial assistance. He is located at 4730 Woodlark Lane Charlotte, NC 28211 He is being sued in his individual and official capacities.

28. Defendant, LESLEY E GARAFOLA, is an independent custody advocate trained and approved by CFCR. NC district court appointee and doing business in NC, CFCR advocacy program. She is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing regulation. SHE is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located at 2020 CHARLOTTE DR CHARLOTTE, NC 28203. She is being sued in her individual and official capacities

29. Defendant, DR. CRYSTAL ROSE BULLARD is an independent mental health provider licensed by the State of North Carolina to practice and doing business in North Carolina and South Carolina. She is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing regulation. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is a recipient of

federal financial assistance. She is located at 330 Billingsley Rd, Charlotte, NC 28211 She is being sued in her individual and official capacities.

30. Defendant MARIE CURRAN is an independent mental health provider in State of NC and doing business in MECKLENBURG, North Carolina. She is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing regulation. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located at CENTER FOR CREATIVITY & HEALING, PC 4728-C PARK ROAD CHARLOTTE, NC 28209. She is being sued in her individual and official capacities.

31. Defendant, SHERRY LYERLY-TARNER, MS, LPC, RT is an independent mental health provider in State of NC and doing business in North Carolina. She is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing regulation. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. She is a recipient of federal financial assistance. She is located at CENTER FOR CREATIVITY & HEALING, PC 4728-C PARK ROAD CHARLOTTE, NC 28209 and PURE WELLNESS & HEALING 4724-A Park Road Charlotte, NC 28209.. She is being sued in her individual and official capacities.

32. Defendant, SHEUNESS CUTHBERTSON, BEHAVIORAL HEALTH CLINICIAN is an independent mental health provider in State of NC and doing business in North Carolina. She is a "private entity" within the meaning of 42 U.S.C. § 12181 and its implementing regulation. She is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations.

She is a recipient of federal financial assistance. She is located at 330 Billingsley Rd, Charlotte, NC 28211 She is being sued in her individual and official capacities.

33. DEFENDANT PETER SALEM as principal , executive director of AFCC. He is both a "public entity" within the meaning of 42 U.S.C. § 12131(1); and "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations. He is a recipient of federal financial assistance. He is located at 6525 Grand Teton Plaza Madison WI 53719. He is being sued in his individual and official capacities.

34. Defendant The Association of Family and Conciliation Courts, AFCC, is a "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations is a world wide organization who generate a revenue by creating programing for problems they create and sell their solutions as programing and policies in Family Courts around the World. None of their programing is compliant with ADA/ADAAA and they teach its members how to circumvent federal laws and Constitutional Principles and Practices with local state rules. AFCC is the Association of Family and Conciliation Courts – the premier interdisciplinary and international association of professionals dedicated to the resolution of family conflict. AFCC members are the leading practitioners, researchers, teachers and policymakers in the family court arena who create, train, sell, endorse programming that violated the ADA/ADAAA. Instead of resolving conflict, its member inject conflict, do not protect children from abuse or women from domestic violence. It is obligated to make its facilities and programing accessible and not discriminatory to people with disabilities Located at 6525 Grand Teton Plaza Madison WI 53719. AFCC is being sued in its business capacity

35. DEFENDANT CENTER FOR CREATIVITY & HEALING(CFCH) s a "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations None of their programing is compliant with ADA/ADAAA and they teach its staff how to

circumvent federal laws and Constitutional Principles and Practices with local state rules. It is located at 4728-C PARK RD, CHARLOTTE, NC 28209. CFCH is being sued in its business capacity.

36. DEFENDANT SMITH MOORE LEATHERWOOD is a "private entity" within the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations None of their programing is compliant with ADA/ADAAA Supervise JOHN ZIMMER It is located at 101 North Tryon St ste 1300 Charlotte, NC 28246. It is being sued in its business capacity

## JURISDICTION AND VENUE

37. This Court has jurisdiction of this action under 28 U.S.C. § 1331, and 42 U.S.C. §§ 12133, 12188 and 1983. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court may grant attorney's fees pursuant to 42 U.S.C. § 12205

38. <u>Exhibit 1 Prakel v Indiana, the court considered whether the son of a criminal defendant was entitled to an ASL interpreter to attend his mother's court proceeding.86 After noting that Title II applied to members of the public and that there is a clear history of the public's right to attend criminal proceedings, the court concluded that this right is included within Title II's protections. It was undisputed that the plaintiff required an ASL interpreter to communicate effectively and that one was not provided. As a result, the court concluded that the plaintiff was denied effective communication and the opportunity to enjoy the benefits of the state courts' services, programs, and activities</u>

39. The acts and omissions of Defendants giving rise to this action occurred in MECKLENBURG COUNTY, NC and UNION COUNTY, NC . Plaintiffs have been situated and aggrieved in UNION COUNTY, NC during a substantial portion of the events giving rise to this action, including present unmitigated harm occurring in this district, making venue proper in this judicial district pursuant to 28 U.S.C. § 1391.

40. Enforcement by the United States Attorney General is invoked pursuant to 42 U.S.C. §§ 12133 and 12188.

41. **FRCP 5.1. Constitutional challenge to appointing mental health providers or any type of evaluations into a civil family proceeding. FRCP 5.1. Constitutional challenge the CFCR Does the judge have the power to discriminate against Plaintiffs with disability from associating with Plaintiff with disability?**

## FACTS

42. At all times herein, Plaintiff Brianne Stephens is a female and biological mother of T S S,D G S, and D S.

43. The United States Department of Health and Human Services (HHS) and the United States Department of Justice (DOJ) issued a technical assistance manual in August 2015, stating: "Title II of the ADA applies to the services, programs, and activities of all state and local governments throughout the United States, including child welfare agencies and court systems. The "services, programs, and activities" provided by public entities include, but are not limited to, investigations, assessments, provision of in-home services, removal of children from their homes, case planning and service planning, visitation, guardianship, adoption, foster care, and reunification services. "Services, programs, and activities" also extend to child welfare hearings, custody hearings, and proceedings to terminate parental rights."

44. On April 2016 DEFENDANT HON GARY L HENDERSON RULED Plaintiff with disability be removed from Plaintiff mother primary care due to "PAS", violating Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA,

42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

45. Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. See 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

46. On April 2016 DEFENDANT JOHN PARKER stated "Ms Stephens is an excellent parent" in open court. Defendant then recommended Minor children TSS,D S be removed from plaintiffs care based on regarded as having disabilities namely "PAS", Parent Alienation. Defendant told Plaintiff, "should something go wrong with minor children in fathers care he will come back on my side with a vengeance" DEFENDANT continued to be biased and discriminating against plaintiffs based on disabilities. Recommending and successfully Segregating plaintiffs from each other based on disabilities.violating Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

47. Defendant JOHN PARKER ON March 29, 2017 court rm 8130 abruptly withdrew from representing minor Plaintiff TSS discriminating based on disabilities denying plaintiff's good services and left minor Plaintiff without legal representation. Then recommended segregating plaintiffs. Used coercion, intimidation toward Plaintiffs with disabilities violating Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

48. Plaintiffs, noted in the "associated cases" filed similar complaints of disability discrimination and other acts prohibited by The Americans with Disabilities as Amended Act. (ADA/ADAAA) In

their complaints, all women claimed same causes of action under ADA/ADAAA and 504 and included in their cause of action "and those similarly situated."

49. Plaintiffs are similarly situated.

50. In APRIL 2007, Ms BRIANNE STEPHENS obtained an approved Parental Contract Agreement concerning TSS,D S minors. The Court of Justice signed an order approving Parent Contract Agreement, agreed and signed by both parents, approving minor children TSS,D S, will reside primarily and in the care of Ms BRIANNE STEPHENS.

51. DEFENDANT HON GARY L HENDERSON was my child support enforcement attorney 7/2007 He should have recused himself from this custody proceeding. Instead Defendant discriminated against plaintiffs with disabilities, and regarded as having disabilities, and subsequently ruled biased against Plaintiffs based on disabilities. Plaintiffs were denied honest goods and services because we were disabled/presumed disabled on the backs of disabled Plaintiffs."

52. According to the U.S. Dept. of Justice, gender bias against women in child custody proceedings is prevalent. (Saunders' report, 2012).

53. The Association of Family and Conciliation Courts (AFCC) promotes the use of "PAS" and use of mental diagnosis and other mental health accusations against mothers and children in family courts.

54. It is the policy of the State of NC and its agencies to use PAS, depression, physical disabilities and other mental health accusations against women and children in family court proceedings. This policy has a disparate impact that adversely affects women and children.

55. The State of NORTH CAROLINA et al., failed to inform Ms. Brianne Stephens of their policy to give preferential treatment to fathers, and that they were acting out of financial motivation, to obtain professional fees and federal "access" grants via The Healthy Marriage and Responsible Fatherhood (HMRF) initiative.

56. Because Defendants regarded Ms. Brianne Stephens as having of PAS, Depression the court was biased against her according to this sex-based stereotype. As a result, Plaintiffs could not fully and equally participate in court proceedings.

57. Defendants did not refer Plaintiffs to a disability accommodations coordinator at the courthouse or at any other location, during the pendency of the family court proceedings, nor offer accommodations to the Plaintiffs. As a result, Plaintiffs could not fully and equally participate in court proceedings.

58. Title II entities have not completed self-evaluations for any of the program, policies, interagency agreements that the plaintiffs were forced to use. If such evaluations took place, harm could have been mitigated. per § 35.105 Self-evaluation. Part (d) of this section is important because most entities purport that they did self-evaluations in 1993. However, the law changed twice, and evaluations that take in consideration these changes show a good faith effort on the entity's behalf. This is not the case here. (d) If a public entity has already complied with the self-evaluation requirement of a regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this section shall apply only to those policies and practices that were not included in the previous self-evaluation.

59. Defendants faked the existence of a mental health impairment, namely "PAS," Parental alienation, as a cause of action for segregating Plaintiffs'.

60. Defendants stereotyped and stigmatized Ms. Brianne Stephens and repeatedly acted on assumptions about Ms. Brianne Stephens mental impairment.

61. Defendants perpetuated the use of "PAS, Parent Alienation, as a real syndrome to prejudice Ms. Brianne Stephens and other women in the family courts

62. DEFENDANT MARIE CURRAN presenter (parental alienation) for volunteer training for custody advocates at Council for Children Rights, founding committee for AFCC NC chapter failed to inform Plaintiff of Parent Alienation agenda used by Courts, CFCR and employee DEFENDANT SHERRY LYERLY TARNER

63. State and Federal laws such the Health Insurance Portability and Accountability Act of 1996 (HIPAA) provide that an individual has the right to privacy and nondiscrimination, the right to choose and decline their own healthcare providers, the right to a trusting relationship with their mental healthcare providers, and the right to Informed Consent.

64. Further, the Fourth Amendment protects the right to privacy, and the Fifth Amendment protects a person from being compelled to incriminate oneself in such evaluations or therapy ordered by the court.

65. DEFENDANT Shantrell G. Williams on 8/19/2014 stated she called my children's therapist. Therapist then called Plaintiff back upset and cancelled our 1st intake appointment. Then Shantrell Williams coerced Plaintiff into choosing DEFENDANT Sherry Lyerly Tarner who is trained and supervised by DEFENDANT MARIE CURRAN the presenter (parental alienation) for volunteer training for custody advocates at Council for Children Rights, founding committee for AFCC NC chapter.

66. DEFENDANT JOHN PARKER DEFENDANT JOHN PHILLIP ZIMMER harassed and coerced Plaintiff to cancel my child's existing therapy appointments at Daymark 8/12/2014 Defendants forced or coerced Plaintiffs into several evaluations where their mental health was questioned by providers. Ms Brianne Stephens did not choose and to whom she specifically objected in open court due to lack of trust. Moreover, Plaintiffs mental health was discussed in open court. This created a hostile environment for the Plaintiffs.

67. Ms Brianne Stephens also has manifested Anxiety, Acute Stress Disorder (ASD) leads to PTSD since removal of child D S. She has received treatment accordingly.

68. From 2014 - present, NC and Mecklenburg County Court has regarded Plaintiffs as each having one or more mental health disabilities, mainly "Parental Alienation Syndrome, Parent Alienation, Depression and Physical Disability and at no time did the obligated defendants offer accommodations or reasonable modifications to Ms BRIANNE STEPHENS                    .

69. Ms BRIANNE STEPHENS is a qualified individual with disabilities within the meaning of 42 U.S.C. §§ 12102 and 12131(2).

70. T S S, D S, and D G S are qualified individuals with disabilities within the meaning of 42 U.S.C. §§ 12102 and 12131(2).

71. "PAS, Alienation " theory places a sex-based stereotype on women.

72. According to the American Psychological Association (APA), there is no reliable empirical data to support the so-called phenomenon of "Parental Alienation Syndrome." Or alienation This "syndrome" and similar ones are used almost exclusively against women.

73. The APA has repeatedly dismissed theory of "Parental Alienation Syndrome" for inclusion in the Diagnostic and Statistical Manual of Mental Disorders.

74. According to the U.S. Dept. of Justice, gender bias against women in child custody proceedings is prevalent. (Saunders' report, 2012).

75. The Association of Family and Conciliation Courts (AFCC) promotes the use of "PAS" and other mental health accusations against mothers and children in family courts.

76. In 2015 HON GARY L HENDERSON also ordered Plaintiffs' with disabilities into custody evaluations with SHERRY LYERLY-TARNER, MS, LPCA to assess them. The court ordered Ms. Brianne Stephens to bring children to sessions costing approximately $1,580.00 for the cost of travel to Mecklenburg County from Union County, to the evaluator; and this was a forced and coerced contract.and it was bc you were disabled/presumed disabled

77. The NC Court did not inform Ms. Brianne Stephens who the evaluator would be, nor if this court appointee was vetted by the State of NC to comply with anti-discrimination statutes.

78. SHERRY LYERLY-TARNER, MS, LPCA grilled Ms. Brianne Stephens and the children.  CFCR COURT APPOINTEES used SHERRY LYERLY-TARNER, MS, LPCA reports to formulate their

report that states that Ms. Brianne Stephens and the children had mental health issues relating to PAS, Depression, Anxiety inter alia.

79. DEFENDANT SHERRY LYERLY TARNER Blocked services to have co-parenting sessions. Instead met to drill questions for CFCR. asking "Is it ok to audio tape sessions for my supervisor," DEFENDANT MARIA CURRAN. On court exhibit SHERRY LYERLY TARNER typed ALIENATING five times in her report. Supporting the regarded "PAS" disability agenda used by CFCR and Courts

80. DEFENDANT SHERRY LYERLY TARNER followed training from Supervisor DEFENDANT MARIA CURRAN presenter (parental alienation) for volunteer training for custody advocates at Council for Children Rights, founding committee for AFCC NC chapter as a result Plaintiffs were denied honest goods and services.

81. From 2014 COURT EMPLOYEES AND COURT APPOINTEES discussed Ms. Brianne Stephens mental health with her therapist and medical records with her doctor, which in turn, they used against her and included in their written reports. These reports were provided to the Court and Ms. Brianne Stephens childrens father, and discussed in open court.

82. Throughout most of the custody proceedings, Ms. Brianne Stephens and the child T S S with disabilities and regarded as having disabilities were underrepresented because CFCR abruptly withdrew 3/29/2017 from representing T S S because she would not go along with their fake "PAS" agenda I could not afford an attorney to represent both and the court discriminated against and refused to re-appoint an attorney, for the child T S S to protect her interests.

83. "Threats to disclose, or disclosure of disabled litigants' confidential information is a form of discrimination and violates the Constitutional right to privacy. The Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws and provides for Due Process of law. Disabled Litigants' right to confidentiality is inherent in the ADA/ADAAA statutory

scheme as well is protected under several federal and state laws, including the Health Insurance

Portability Act (HIPAA). The ADA/ADAAA applied in conjunction with other federal laws, provides

protection at a level greater or equal to that provided by other federal and state laws, and prevails over

any conflicting the ADA/ADAAA" ADA Title II Technical Assistance Manual, II-1.4200.

84. This includes manifestation of PTSD, courts falsely accused Plaintiff of a history of abuse are

manifestations of Ms. Brianne Stephens actual disability of Sjogren's Disease, Scleroderma, Partial

Blindness, Digestive disorder.

85. The defendants' actions and inactions, most relevant are the prohibitions of 42 USC 12203 clear

violation of Title 42 U.S.C. § 12203, a prohibition against interference, coercion, intimidation, and

threatening;, which grossly manifested into physiological symptoms including nausea and nervous

stomach. Ms. Brianne Stephens was visibly ill and under duress; had difficulty breathing, chills, flu like

symptoms and had to medicate herself was unable to cope and communicate effectively in court; and

unable to fully understand the proceedings.

86. The State and its agencies did not inform Ms. Brianne Stephens if this SHERRY LYERLY-TARNER,

MS, LPCA and DEFENDANT MARIA CURRAN was vetted by the State of NC to comply with

anti-discrimination statutes.

87. The State of NC et al did not provide Ms. Brianne Stephens a full and equal opportunity to benefit from

its services in support of reunification with her children.

88. DR C BULLARD, SHEUNESS CUTHBERTSON ON 11/1/2017 PURPOSELY DENIED plaintiff

FAMILY THERAPY NIGHT HELD DURING D S PARTIAL HOSPITALIZATION FROM OCT 17,

2017 -NOV 7, 2017 denying Plaintiff right to therapy/services.

89. DEFENDANT JOHN PHILLIP ZIMMER on 10/2014 coerced Plaintiff under duress to change our visit

schedule, however I didn't agree to an open period in our parental Parent Contract. I never gave

permission to destroy our parental contract agreement that kept Plaintiff and children safe, gave us a sense of stability and emotional well being. I would never ever allow those to be taken from us.

90. DEFENDANT LASHONDA GREENE, On JULY 3, 2017 failed to offer services through the department.Discriminated against plaintiffs with disabilities and failed to keep minor plaintiff safe. Plaintiff with disability then hospitalized after being left in care of at-risk Fathers home.caseworkers are not only corrupt, but also incompetent; the State fails to train them adequately to protect children. Instead they employ threats and manipulation, which happened here.

91. The NC, DSS, CFCR are obligated to make reasonable efforts to maintain the family unit and to prevent the unnecessary removal of a child from his or her home.They did not make those efforts in regard to Plaintiffs. Plaintiffs were denied honest goods and services on the backs of disabled plaintiffs

92. The State of NC and its agencies are inaccessible to Plaintiff Brianne Stephens

93. Because the Defendants exploited Plaintiffs' disabilities, it has rendered Brianne Stephens diagnoses ASD leads to PTSD so severe that she does not trust them, has lost faith in the legal system, and cannot effectively communicate with them to retrieve and access her child.

94. Ms. Brianne Stephens has experienced physiological impairments accompany in PTSD that negatively affect major life activities and bodily functions - significant loss of sleep, depression, anxiety, difficulty concentrating, and difficulty breathing, inter alia. Ms.Brianne Stephens has had to seek a significant amount of medical treatment to mitigate her condition (i.e. Dr visits, therapy, medications).

95. ASD leads to PTSD is not curable. The duration and manifestations of Ms. Brianne Stephens ASD, ASD leads to PTSD are greater than six (6) months and are lifelong. Studies consistently show that individuals with ASD leads to PTSD have an increased risk of dying from coronary heart disease.

96. Defendants have failed to mitigate the ongoing harm complained of herein.

97. Plaintiffs' reserve the right to expand these proceedings.

98. Plaintiffs' reserve the right to include Defendants

# CAUSE OF ACTION

## COUNT I

## VIOLATIONS OF PROTECTION PROVIDED BY TITLES II AND III OF

## THE AMERICANS WITH DISABILITIES ACT

99. Paragraphs prior are re-alleged and reasserted as if fully set forth here.

100. Brianne Stephens is an individual with Scleroderma, Sjogrens, Partial Blindness; and regarded by Defendants as an individual having "PAS" and Depression. She required appropriate individualized treatment and accommodations necessary to ensure full and equal access to court proceedings concerning her parental rights and the custody of her minor children D S and T S S.; accordingly, she is a qualified individual with a disability as defined by 42 U.S.C. §§ 12102 and 12131(2). ASD leads to, PTSD is listed under "predictable assessments" under the ADA and its implementing regulation. Plaintiff's disabilities must be assessed without regard to mitigating measures.

101. T S S and D S are two minor children regarded by Defendants as individuals having "PAS." Anxiety, Depression. They required appropriate individualized treatment and accommodations necessary to ensure full and equal access to court proceedings concerning their custody and their mother's parental rights; accordingly, they are each a qualified individual with a disability as defined by 42 U.S.C. §§ 12102 and 12131(2). Plaintiffs' disabilities must be assessed without regard to mitigating measures.

102. Because the actions complained of herein occurred from 2014 to present, the greatly expanded definition of the ADA Amendments Act of 2008, Final Rule of 2016, and parallel State law changes apply.

103. Ms. Brianne Stephens actual disabilities Sjogrens, Scleroderma, anxiety, ASD, ASD leads to PTSD disabilities fall under actual physical and mental impairment/psychiatric injury and physiological

impairment, which substantially limit one or more major life activities. Ms. Brianne Stephens has records of such impairments.

104. Plaintiffs' "PAS" and Depression disabilities fall under the greatly expanded *regarded as* prong of the ADA. Ms. Brianne Stephens has court records of such perceived mental impairments.

105. *Major life activities* and *substantial limitations* are to be construed as broadly as possible under the ADAAA and its implementing regulations.

106. Under the ADAAA, "major life activities" include "major bodily functions."

107. Plaintiffs do not have to identify any major life activity or bodily functions that are substantially limited, under the ADAAA and its implementing regulations, but have.

108. Defendants have subjected Plaintiffs to an ongoing mental war zone from 2014 – present. The U.S. military does not send any personnel on a tour lasting over 278 days as it is found to cause harm.

109. Each day that passes adds incremental harm. Ms. Brianne Stephens ASD leads to PTSD cannot be treated until the ongoing trauma ends. A mitigating measure and remedy would require the restoration of Plaintiff child D S to Plaintiff mother, and siblings per enforcement of the PARENTAL CONTRACT AGREEMENT.

110. Defendants have failed to mitigate the harm they have done to Plaintiffs'.

111. Unmitigated harm is a continuing cause of action.

112. Defendants State of North Carolina court STATE OF NORTH CAROLINA, OFFICE OF THE ATTORNEY GENERAL OF STATE OF NORTH CAROLINA; NORTH CAROLINA ADMINISTRATIVE OFFICE OF THE COURTS; NORTH CAROLINA JUDICIAL BRANCH of MECKLENBURG COUNTY SUPERIOR COURT; HON MARK MARTIN in his official and individual capacity; HON GARY L. HENDERSON, in his official and individual capacity as Judge of the Mecklenburg County District Court; ASSOCIATION OF FAMILY AND CONCILIATION

COURTS (AFCC); COUNCIL FOR CHILDREN'S RIGHTS (CFCR); BOB SIMMONS, in his official and individual capacity;.MECKLENBURG COUNTY DEPARTMENT OF SOCIAL SERVICES

113.    CHILD PROTECTIVE SERVICES; are a government or a department, agency, or other instrumentality of a State or states or local government; accordingly, Defendants are public entities as defined in 42 U.S.C. § 12131(1).

114.    Defendants SHERRY LYERLY-TARNER, MARIE CURRAN CRYSTAL ROSE BULLARD, SHEUNESS CUTHBERTSON, JOHN PHILLIP ZIMMER, JOHN PARKER, PEGGY THIES, PATRICIA ANN TUTONE, BRETT CHRISTOPHER HOLLADAY, ANN ROSE MARIE JOHNSON LEWIS, LESLEY GARAFOLA are private entities within the meaning of 42 U.S.C. § 12181.

115.    Defendants are subject to both Title II and Title III of the ADA because of contractual arrangements.

116.    Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

117.    Title III of the ADA, 42 U.S.C. § 12182, provides that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

118.    Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), provides that: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

119. Defendants removed Ms. Brianne Stephens child D S from her custody, no contact and effectively de facto terminated her parental rights based on regarding her as having "PAS", Alienation, Depression and the sex-based stereotype of that "mental impairment"; and based on Ms. Brianne Stephens ASD leads to PTSD and assumptions about this mental impairment. As a result, TSS D S, and D G S have been discriminated against on the basis of their association with an individual with a disability.

120. Defendants and DEFENDANT BRETT CHRISTOPHER HOLLADAY have intentionally discriminated against Plaintiffs as qualified individuals with disabilities, on the basis and stereotypical assumptions of those disabilities, and through contractual arrangements, in the full and equal opportunity of their services, programs, activities, facilities, privileges, advantages, and accommodations, in violation of Title II of the ADA, as amended, 42 U.S.C. § 12131 *et seq.*, and its implementing regulation at 28 C.F.R. Parts 35; Title III of the ADA, as amended, 42 U.S.C. § 12181 *et seq.*, and its implementing regulation at 28 C.F.R. Parts 36, by, inter alia:

121. DEFENDANT LASHONDA GREENE caseworkers are not only corrupt, but also incompetent; the State fails to train them adequately to protect children with disabilities. Instead they employ threats and manipulation, which happened here. Denying Plaintiffs' the opportunity to participate in or benefit from Defendants' services, programs, activities, facilities, privileges, advantages, and accommodations in violation of 28 C.F.R. § 35.130(b)(1)(i); and 28 C.F.R. §§ 36.201, 36.202, and 36.203.

122. DEFENDANTS ANN ROSE LEWIS JOHNSON used delayed tactics that prevented the case from being heard in a timely manner. Denying Plaintiffs with disabilities and regarded as having disabilities an opportunity to participate in or benefit from Defendants' services, programs, activities, facilities, privileges, advantages, and accommodations that is not equal to that afforded to Ms. Brianne Stephens children's father in violation of 28 C.F.R. § 35.130(b)(1)(ii); and 28 C.F.R. §§ 36.201, 36.202;

123. On December 6 and 7, 2018 Defendants ANN ROSE LEWIS JOHNSON falsified facts and law to benefit themselves financially, harass and oppress Plaintiffs with regarded as having disabilities, put children with disabilities in crisis, inflict emotional distress upon Plaintiffs,

124. Limiting Plaintiffs in the enjoyment of the rights, privileges, advantages, or opportunities enjoyed by Ms. Brianne Stephens children's father, in violation of 28 C.F.R. § 35.130(b)(1)(vii); and 28 C.F.R. §§ 36.201, 36.202;

125. Utilizing criteria or methods of administration that had the effect of subjecting an individual with a disability to discrimination on the basis of disability or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Defendants' services, programs, and activities with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3); and 28 C.F.R. §§ 36.301(a) and 36.204;

126. On January 30, 2017 DEFENDANT JOHN J. PARKER emailed PLAINTIFFS' atty DEFENDANT BRETT HOLLADAY indicating that CFCR want to proceed with a psychological evaluation through Monarch for PLAINTIFF. JOHN J. PARKER asked that BRETT HOLLADAY draft the Order. these activities, selecting vendors, forcing/coercing Plaintiffs into, and entering into, contractual arrangements to be used to evaluate Plaintiffs' mental health that had the effect of excluding Plaintiffs from, denying them the benefits of, or otherwise subjecting them to discrimination and disparate treatment, or that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' services, programs, and activities with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130 (b)(1)(v) and (b)(4); and 28 C.F.R. §§ 36.201, 36.202, and 36.203.

127. DEFENDANT BRETT CHRISTOPHER HOLLADAY FAILED TO ADDRESS persona jurisdiction or inform PLAINTIFF of Disability Court Coordinator knowing Ms Brianne Stephens had disabilities and was regarded as having "PAS" disabilities by DEFENDANTS. Plaintiff asked if she could use UNION county courts since we lived and went to school there. and was told "No"

by DEFENDANT HOLLADAY. Ms Brianne Stephens was forced to commute from UNION county to Mecklenburg County Court. Defendant BRETT HOLLADAY'S actions and inactions lead to further harm to Plaintiffs needs of persons with disabilities, in violation of 28 C.F.R. § 35.130(d); and 28 CFR 36.203

128. Failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the Defendants can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity, in violation of 28 C.F.R. § 35.130(b)(7); and 28 C.F.R. § 36.302;

129. failing to administer Defendants' services, programs, and activities in the most integrated setting appropriate to the needs of persons with disabilities, in violation of 28 C.F.R. § 35.130(d); and 28 CFR 36.203;

130. failing to operate Defendants' services, programs, activities, and facilities so that, when viewed in its entirety, it is readily accessible to and usable by mothers and their children, in the most integrated setting appropriate, in violation of 28 C.F.R. §§ 35.150 and 35.151; and 28 C.F.R. § 36.203;

131. refusing to offer and provide appropriate individualized treatment and accommodations necessary to ensure full and equal opportunity for Ms Brianne Stephens and her children to participate in Defendants' programs, services, and activities;

132. stereotyping and stigmatizing Ms. Brianne Stephens and repeatedly acting on assumptions about Ms. Brianne Stephens's disabilities in violation of 28 C.F.R. § 35.130(h); and 28 C.F.R. § 36.301(b);

133. perpetuating the use of "Parental Alienation Syndrome, parental alienation Past depression to discriminate Plaintiff and children from associating with each other. They discriminated against Plaintiff from associating with child partially based on Munchausen By Proxy (fake history) given by children's father. also used undiagnosed "PAS" as a real syndrome to prejudice Ms. Brianne Stephens

and other women in the family courts in violation of 28 C.F.R. § 35.130 (b)(1)(v); and 28 C.F.R. § 36.301;

134.     excluding or otherwise denying equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 28 C.F.R. 35.130(g);

135.     Defendants included children's father and girlfriend (now ex-girlfriend) in family sessions while excluding or otherwise denying PLAINTIFF mother of equal services.

136.     depriving the Plaintiffs of their honest services;

137.     blocking or otherwise denying representation by an attorney for Plaintiffs TSS to protect her rights;

138.     DEFENDANT HON GARY L HENDERSON RULED, on 1/2/2018 PLAINTIFF used supervised visits to pray with son, then discontinued all visits de facto ten months. <u>Intentionally discriminating against Plaintiffs (SEE EXHIBIT A EMAIL RULING) (SEE EXHIBIT B ORDER)</u> violating Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

139.     segregating Plaintiffs from each other based on disability;

140.     effectively de facto terminating Ms. Brianne Stephens parental rights AND CUSTODY based on disability and regarded as having disabilities ;

141.     retaliating against Plaintiffs in violation of 28 C.F.R. 35.134; DEFENDANT HON GARY L HENDERSON RULED MS Brianne can attend school activities 11/2016. When MS Brianne Stephens attended school activity 2/2017, court ruled no wrongdoing on 3/29/2017. Later ruled 1/2/2018 violation for attending school activity. Court discriminated against Ms Brianne Stephens, with disability, from associating with child D S with disability.

142.     failing to mitigate the harm that continues through present.



James,

I believe the below email was sent to me in error.  Thanks.

Brett

---

**Brett Holladay**
*Attorney*



MILLER
BOWLES
LAW

*family people. family law*

508 East Boulevard | Charlotte, North Carolina 28203
Phone 980.321.5590 | Fax 980.321.5570
www.millerbowleslaw.com | bholladay@millerbowleslaw.com



CLIENTS:  This email contains confidential communications and information that may be protected by the Attorney-Client Privilege.  Forwarding or sharing it with 3rd parties may waive this privilege thereby allowing opposing parties to review this email.  You are advised to not forward or share this information to anyone without your attorney's consent.

Any advice contained herein is not intended or written by us to be used, and may not be used or relied on, for the purpose of avoiding penalties under the Internal Revenue Code.  Further, any advice contained herein relating to federal tax matters is not intended or written by us to support the promotion or marketing of the transactions or matters addressed herein.

This e-mail message and its attachments are for the sole use of the intended recipients.  They may contain confidential information, legally privileged information or other information subject to legal restrictions.  If you are not the intended recipient, do not read, copy, use or disclose this message or its attachments.  Please notify the sender by replying to this message and delete it or destroy all copies of this message and attachments in all media.

**From:** Calhoun, Guldeste T. [mailto:Guldeste.T.Calhoun@nccourts.org]
**Sent:** Tuesday, January 02, 2018 2:58 PM
**To:** Parker, John; Tarik Shah; Ann Rose Johnson Lewis
**Cc:** John Zimmer; Lesley Garafola; Brett Holladay
**Subject:** Decision on Stephens vs. Shah matter 02cvd20573

Good afternoon All,

I hope you all had a great holiday! Please see below Judge Henderson's decision on Stephens vs. Shah matter 02cvd20573.

This is undoubtedly the most difficult custody case that I have dealt with.  Unfortunately, this custody case has become one of life and death for this young man and I am left with no choice but to accept most of the recommendation from CFCR.  Interestingly, CFCR made a recommendation in March 2016 for primary custody to be with father and for mother to have alternating weekends.  The Court chose to deviate from this recommendation because mother appeared to be a loving parent and the Court had hope and faith that with

a 50/50 schedule mother would began to accept father as an equal parent and work towards co-parenting together. Unfortunately, it appears mother has squandered that opportunity and we have a child who in early 2016 was doing well and simply wanted to spend more time with his father to now a child who has made several suicide attempts and who is having mental and emotional issues. Even though I still struggle with the drastic recommendation to remove mother from the child's life altogether, because this has become a case of life and death for this young man, I find that the recommendation is in the child's best interests at this time. However, I differ with the recommendation in terms of it being a permanent order. Instead, I would like to make this a temporary order and come back in roughly 10 months to see (1) how the child is doing and (2) how mother is doing with individual counseling (to address her interactions with the child). I contemplated a 6 month schedule and then reuniting mother and child through a reunification therapist, but there is just no telling whether the child will be ready in that time frame. So, I thought it better for the child to have a longer period of time (10 months +-) and then we come back to see where he is and then I can hear evidence and determine a time frame and method of reunification. Attorneys Thies and Tutone are to draft the order consistent with CFCR recommendation with the above modification and including findings consistent with the evidence presented at trial. Such findings should include but are not limited too:

-   The child las been diagnosed with adjustment disorder with mixed anxiety and depressed mood
-   The child has 3 major stressors: (1) the custody conflict between his parents, (2) bullying/picking at school and amongst his peers, and (3) feeling unwanted based on statements his mother has made regarding circumstances of his birth and his father
-   It appears, based on the child's medical and treatment records, that the bullying at school is the predominant factor for his suicidal attempts, although the other two factors play a significant contributing role as well.
-   Mother has exercised all of her visitations when allowed and she seeks to keep child engaged with her and his siblings. Unfortunately, it also appears that mother uses these visitations to impose her religious and personal beliefs upon the child which creates pressure and internal conflict with the child. The child has at times removed himself from the visitations because of this pressure and internal conflict.
-   Mother testified that she recently voluntarily underwent a psychological evaluation and that there were no recommendations. However, roughly 10 years ago she did have to go to behavioral health and was diagnosed with depression.
-   In violation of the spirit of the temporary custody order, mother when to the child's school on 2/23/17 to visit with the child. Mother claimed she went to the school to volunteer in the library but two school administrators testified to no recollection of mother ever having volunteered at the school in the past. Mother found her way to the cafeteria during the time of the child's lunch and had a brief encounter with him. After this encounter, the child immediately had another suicidal episode.
-   Testimony and notes from Child Psychologist, Dr. Christal Bullard, who treated the child while in Behavioral Health, find that the child has a history of physical and mental abuse by mother. In his current mental state, the triggers of the school bullying/pressure along with mother are too much for the child do deal with at one time.

Again, I struggle with this decision, but it is about doing what is best for the child at this point in time and not about parent's individual rights. I am hopeful that the child will progress to the point where he can once again have both parents in his life. But, that involvement must be positive and not another factor in lessening his mental state. Thank you.

**Gary L. Henderson, Judge**
District Court Judge, Mecklenburg County
832 E. 4th Street, Suite 9600
Charlotte, NC 28202
7043-686-0101 T

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

BRIANNE STEPHENS,

        Plaintiff/Mother,

        vs.

TARIK SHAH,

        Defendant/Father.

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
02-CVD-20573(GLH)

2018 FEB -8 P 2: 20

MECKLENBURG CO., C.S.C.

BY_____

**TEMPORARY CHILD CUSTODY ORDER**

EXHIBIT "B" 8pgs

This matter was before the court on December 6 and 7, 2017, for hearing on (1) Plaintiff's ("Mother") Motion to Modify Child Custody and for Attorney's Fees and (2) Defendant's ("Father") Motion to Modify Child Custody and for Attorney's Fees concerning custody of the minor child Douglas Stephens ("the child"). Mother was present with her attorneys, James Epperson and Amber Morris of Epperson Law, PLLC. Father was present with his attorney, Ann-Rose Johnson-Lewis of Johnson Lewis Law Firm, PLLC. Peggy Thies, Patti Tutone, and John Zimmer, the child's best interest attorneys, and Lesley Garafola, his custody advocate, all affiliated with Council for Children's Rights ("CFCR"), were also present. Having heard and considered the evidence and the arguments of counsel, the Court makes the following findings of fact and conclusions of law and enters the following order.

### FINDINGS OF FACT

    1.    Mother is a citizen and resident of Matthews, Union County, North Carolina, and has been for more than six months preceding the institution of this action.

    2.    Father is a citizen and resident of Charlotte, Mecklenburg County, North Carolina, and has been for more than six months preceding the institution of this action.

    3.    Mother and Father were never married to each other.

4.     Mother and Father are the parents of two minor children: Tangerae Stephens Shah, born October 30, 2000, and Douglas Stephens, born November 4, 2004 (together, "the minor children"). Custody of Tangerae is not presently at issue in this action.

5.     A Permanent Child Custody Order was entered on April 15, 2016, awarding (1) joint physical custody of the child on a week-on, week-off schedule subject to certain exceptions for holidays and special occasions and (2) joint legal custody of the child with Mother having the final say as to educational decisions and Father having the final say concerning medical decisions.

6.     On October 26, 2017, both parties filed Ex Parte Motions for Temporary Emergency Custody following two suicide attempts by the child that resulted in his hospitalization at Carolinas HealthCare Systems Behavioral Health-Charlotte ("BHC").

7.     After a hearing on November 10, 2016, the Court entered an Emergency Order for Temporary Child Custody on December 21, 2016, granting primary physical custody of the child to Father and three hours of supervised visitation per week to Mother.

8.     On February 3, 2017, Father filed a Motion to Modify Custody requesting that the Court make the December 21, 2016 Emergency Temporary Custody Order a permanent order.

9.     On March 2, 2017, Father filed another Ex Parte Motion for Emergency Child Custody.

10.     On March 9, 2017, the court entered an Order granting Father's Ex Parte Motion for Emergency Child Custody based on the court's findings that the child was in psychological and emotional distress and had recently attempted to harm himself immediately after an unauthorized visit by Mother to his school. The court awarded temporary sole physical custody of the child to Father and no visitation to Mother pending further hearing on the matter. The court set a hearing for March 29, 2017.

2

11.    At the March 29, 2017 hearing, the court heard limited evidence regarding Mother's visit to the child's school on February 23, 2017.

12.    On April 28, 2017, the court entered an Amendment to Emergency Order for Temporary Child Custody, providing that both parties have complete access to all school information and the right to participate in school conferences, but that Mother not be present at the school except for school conferences.

13.    On May 26, 2017, the court entered the Order resulting from the March 29, 2017 hearing, denying Father's Emergency Custody Motion and vacating the Ex Parte Emergency Custody Order. The Order restored the parties' custodial rights and responsibilities pursuant to the December 21, 2016 Temporary Custody Order as amended in the April 28, 2017 Amendment to the Emergency Order for Temporary Child Custody.

14.    At the present trial, the court reviewed medical records and notes from the child's various admissions to BHC since the last Permanent Custody Order, including (1) from October 26, 2017 through October 30, 2017 following two suicide attempts at Father's home; (2) from March 1, 2017 through March 3, 2017 after the child attempted to cut himself twice after Mother's surprise visit to the school; (3) for a psychological assessment on September 10, 2017 based on the child's statements to his therapist, Jude Johnson, that he was tired of being bullied and wanted to shoot up his school; (4) from September 17, 2017 to September 28, 2017 after the child expressed suicidal thoughts to Mother during a supervised visit; (5) for a psychological assessment on October 9, 2017 after the child expressed depression and passive suicidal thoughts to a teacher; and (6) from October 17, 2017 through November 7, 2017, for a partial-hospitalization, day treatment program to address ongoing mental health issues.

3

15.    The court heard testimony from Dr. Crystal Bullard, who treated the child during the partial-hospitalization program at BHC.

16.    The child has been diagnosed with adjustment disorder with mixed anxiety and depressed mood.

17.    The child has three major stressors: (1) the custody conflict between his parents; (2) bullying or being picked on at school and amongst his peers; and (3) feeling unwanted based on statements Mother has made regarding the circumstances of the child's birth and Father.

18.    It appears, based on the child's medical and treatment records, that bullying at school is the predominant factor for his suicide attempts, although the other two factors play a significant contributing role as well.

19.    Mother has exercised all of her visitations when allowed and she seeks to keep the child engaged with her and his siblings. Unfortunately, it also appears that Mother uses these visitations to impose her religious and personal beliefs upon the child which creates pressure and internal conflict with the child. The child has at times removed himself from visitations because of this pressure and internal conflict.

20.    Mother testified that she recently voluntarily underwent a psychological evaluation and that there were no recommendations; however, roughly 10 years ago she did have to go to BHC and was diagnosed with depression.

21.    In violation of the spirit of the Temporary Custody Order, Mother went to the child's school on February 23, 2017 to visit with the child. Mother claimed she went to the school to volunteer in the library but two school administrators testified to no recollection of Mother ever having volunteered at the school in the past. Mother found her way to the cafeteria during the time of the

4

child's lunch and had a brief encounter with him. After this encounter, the child immediately had another suicidal episode.

22.    Based on Dr. Bullard's testimony and notes, the child has a history of physical and mental abuse by Mother. In his current mental state, the triggers of school bullying/pressure along with Mother are too much for the child to deal with at one time.

23.    Mother needs individual counseling to address her interactions with the child.

24.    Father is a fit and proper person to have physical and legal custody of the child.

25.    At this time, Mother is not a fit and proper person to have physical custody of the child.

26.    Mother is a fit and proper person to have secondary legal custody of the child, including access to the child's medical, school and other important records.

27.    At this time, it is in the child's best interests that Father have sole physical custody and primary legal custody.

28.    At this time, it is in the child's best interests that he have no contact with Mother.

29.    The circumstances of this case make a temporary order appropriate.

## CONCLUSIONS OF LAW

1.    The Court has jurisdiction over the parties, the subject matter of this action, and the minor children.

2.    Father is a fit and proper person to have temporary sole physical custody and temporary primary legal custody of the child.

3.    Mother is not a fit and proper person to have physical custody or contact with the child at this time.

5

4. Mother is a fit and proper person to have secondary legal custody of the child, including access to the child's medical, school and other important records.

5. At this time, it is in the child's best interests that Father have sole physical and legal custody.

6. At this time, it is in the child's best interests that he have no contact with Mother.

7. The circumstances of this case make a temporary order appropriate.

8. Any other Finding of Fact necessary as a Conclusion of Law is hereby incorporated as a Conclusion of Law.

Based upon the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED:

1. **Physical Custody**. Father shall have temporary sole physical custody of the child. Mother shall have no contact with the child unless and until the Court modifies this Temporary Custody Order. Mother shall not attempt to communicate with the child by any means and shall not respond to any attempts by the child to contact her. Mother shall not be present at the child's school or any other setting where the child is present.

2. **Legal Custody**. Father shall have primary legal custody of the child. Father shall inform Mother of any significant changes in the child's education, health, welfare or activities—including, but not limited to, any hospital visits, changes in counselors, school suspensions, and school transfers. Mother shall have access to the child's medical, school and other important records, but Mother shall not contact school personnel, counselors, or individual medical providers to inquire about the child or Father.

6

3.   Mother shall participate in individual counseling to address her interactions with the child. Mother shall provide her counselor(s)' name and contact information to CFCR upon commencing counseling and sign any releases necessary for CFCR to obtain her counseling records. Mother shall notify CFCR of any changes in her counselor(s).

4.   Each of the parties shall at all times keep the other party and CFCR advised as to his or her current contact information, including his or her residence address, mailing address (if different), phone number(s) and email address.

5.   Father shall not (1) refer to Mother in the presence or hearing of the child in a negative, derogatory or disparaging manner; (2) mention or discuss with the child or in his presence or hearing matters related directly or indirectly to this Order, custody, visitation, court, what happened in court, the judge, the attorneys, CFCR, child support, or anything related to past or present disputes between the parties, provided, however, that Father can inform the child that the Court decided to suspend his visits and all contact with Mother for the time being; or (3) mention or discuss with the child or in his presence or hearing any perceived shortcomings of Mother.

6.   This Order shall be reviewed in ten months. At such time, the Court shall (1) review how the child is doing, (2) review how Mother is doing with individual counseling, and (3) hear evidence and determine a timeframe and method of reunification.

7.   The parties shall continue to cooperate with CFCR in connection with this action.

8.   The Court retains jurisdiction of this action and should either party willfully fail to comply with or to perform the terms and conditions of this Order, this Court may enforce the Order by its contempt powers or otherwise as provided by law.

9.    The parties shall bear their own attorneys' fees and costs.  Father should pursue child support as he is now sole custodian of the child.

This the 29 day of ___January___, 2018.

_Gary L. Henderson_
Gary L. Henderson
District Court Judge

143.    DEFENDANT PEGGY THEIS emailed, on January 18, 2018, "we will not be filing a motion to

challenge subject matter jurisdiction." After Plaintiff requested jurisdiction be addressed to allow

Plaintiffs equal access to courts.  DEFENDANTS actions and inactions excluded or otherwise denying

equal services, programs, or activities to an individual or entity because of the known disability of an

individual with whom the individual or entity is known to have a relationship or association, in violation

of 28 C.F.R. 35.130(g);

144.    As a result of Defendants actions and inactions, Ms. Brianne Stephens  and her three children

TSS,D S, and D G S  are persons aggrieved who have been injured and suffered pecuniary losses,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non

pecuniary losses.

145.    A Judge is not immune for tortious acts committed in a purely Administrative, non-judicial

capacity. Forrester v. White, 484 U.S. at 227-229, 108 S.Ct. at 544-545; Stump v. Sparkman, 435 U.S.

at 380, 98 S.Ct. at 1106. Mireles v. Waco, 112 S.Ct. 286 at 288 (1991).

146.    A state forfeits its sovereign immunity upon accepting the funding under section 504 of the

Rehabilitation Act of 1973. Any immunity is abrogated.

147.    The Defendants in this section have not done self-evaluations of their agencies, policies interagency

agreements, etc. per § 35.105 Self-evaluation.

## COUNT II

## VIOLATIONS OF TITLE III OF ADA/ADAAA

148.    Defendant The Association of Family and Conciliation Courts, AFCC, is a "private entity" within

the meaning of 42 U.S.C. § 12181(1); and is subject to the ADA and its implementing regulations is a

world wide organization who generate a revenue by creating programing for problems they create and

sell their solutions as programing and policies in Family Courts around the World. None of their

programing is compliant with ADA/ADAAA and they teach its members how to circumvent federal

laws and Constitutional Principles and Practices with local state rules. AFCC is the Association of Family and Conciliation Courts – the premier interdisciplinary and international association of professionals dedicated to the resolution of family conflict. AFCC members are the leading practitioners, researchers, teachers and policymakers in the family court arena who create, train, sell, endorse programming that violated the ADA/ADAAA. Instead of resolving conflict, its member inject conflict, do not protect children from abuse, neglect or women from domestic violence. It is obligated to make its facilities and programing accessible and not discriminatory to people with disabilities.

149. This entity depends on disregarding the ADA/ADAAA to open mothers' contract that two parents signed regarding the care, custody, financial consideration of the two plaintiff minor children TS S and D S,and such was an interference of the plaintiff mothers right to contract. It is obligated to make its facilities accessible to people with disabilities.

150. DEFENDANT HON GARY L HENDERSON ruled on January 2, 2018 Plaintiff has a history of abuse, WITH NO HISTORY OF ABUSE. No evidence presented of abuse.NO MEDICAL PROOF. DEFENDANT have not done self-evaluations of their agencies, policies interagency agreements, etc. per § 35.105 Self-evaluation.

151. Violation of this lead to loss of parenting time and further perpetuate emotional abuse.

## COUNT III

### VIOLATIONS OF 42 USC 12203 COERCION AND INTIMIDATION

### AND SECTION 504 OF THE REHABILITATION ACT OF 1973

152. All previous paragraphs are re-alleged and reasserted as if fully set forth here.

153. Brianne Stephens is an individual with Sjogrens Disease, Scleroderma, Partial Blindness and regarded by Defendants as an individual having "PAS" and Depression . She required appropriate individualized treatment, accommodations, and full and equal access to court proceedings concerning

her parental rights and the custody of her minor children TSS and D S accordingly, she is a qualified individual with a disability.

154.    DEFENDANTS ACTIONS AND INACTIONS caused injury to PLAINTIFFS WITH DISABILITIES.

155.    T S S and D S, two. minor children **regarded by Defendants** as individuals having "PAS, Anxiety, Depression" They required appropriate individualized treatment, accommodations, and full and equal access to court proceedings concerning their custody and their mother's parental rights; accordingly, they are each a qualified individual with a disability.

156.    Defendants are recipients of federal financial assistance.

157.    The Healthy Marriage and Responsible Fatherhood (HMRF) initiative is a $150 million discretionary grant program originally authorized under the Deficit Reduction Act of 2005 and reauthorized under the Claims Resolution Act of 2010.

158.    The State of NC et al, have a policy and *modus operandi* of discriminating against mothers, particularly <u>single</u> mothers and victims of domestic violence, in order to receive federal grants via The Healthy Marriage and Responsible Fatherhood (HMRF) initiative.  Defendants pit Responsible Fatherhood against the Violence Against Women Act (VAWA) to generate a cyclical need for funding.

159.    See Quillion v Wollcot US 1978, when a dissolution is granted the state creates two new families and the "best interest is interest standard is unconstitutional for the state to disturb the families it created. Only by child protective services can the state intercede in families.

160.    Defendants have a pattern and practice of using mental health accusations and discriminatory policies, namely "PAS and Depression," against mothers and children to achieve the goal of getting federal funding via HMRF.

161.    Defendants here used Ms. Brianne Stephens family to obtain federal "access" grants via Fatherhood funding to further discriminate against Ms. Brianne Stephens and her children.  Defendants gave,

children's father more access to the children to the extent where Ms.Brianne Stephens access to the children was completely taken away based on her disabilities and sex-based stereotypes of those disabilities.

162.    Defendants perpetuated a cycle of psychological conditioning, eugenics, and social engineering here. All Defendants who are mental health professionals and social workers are well-aware of the outcome of their intentional tortious actions; Harry Harlow's experiments on rhesus macaques and reports on his findings of the negative effects of maternal deprivation is standard learning for Psychology and Sociology education. Defendants are knowingly doing damage to individuals and to society as a whole. Their actions cause depression, problems in interpersonal relationships, suicide, homicide, and many other inflictions and adverse outcomes that affect society and global commerce.

163.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that no qualified individual with a disability, solely by the reason of his or her disability, may "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

164.    Defendants have discriminated intentionally against Plaintiffs by refusing appropriate individualized treatment and accommodations necessary to ensure full and equal opportunity for Plaintiffs to participate in Defendants' programs in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

165.    The plaintiffs are seeking damages and other relief from the defendants' lack of compliance with ADA/ADAAA and 504. These administrative failings resulted in denial of plaintiffs' 14th amendment rights. The defendants' actions resulted in deprivations and ongoing and accruing harm that is under color of office, color of authority and color of law. Actions the defendants are obligated to remedy but instead willfully continue harm. So egregious that every attempt plaintiff makes to vindicate their rights, they are retaliated against.

## COUNT IV

## DAMAGES ASSOCIATED WITH

## VIOLATIONS OF 42 USC 12203 COERCION AND INTIMIDATION

166.    DEFENDANTS clear violation of Title 42 U.S.C. § 12203, a prohibition against interference,

coercion, intimidation, and threatening; As a result of Defendants' actions and inactions, Ms. Brianne

Stephens and her children TSS,D S, and D G S are persons aggrieved who have been injured and

suffered pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment

of life, and other non pecuniary losses.

167.    Picking v. Pennsylvania R. Co. 151 Fed. 2nd 240; Pucket v. Cox 456 2nd 233

Pro se pleadings are to be considered without regard to technicality; pro se litigants pleadings are not to be

held to the same high standards of perfection as lawyers. Plaintiffs require the accommodation or

reasonable modification of counsel. Please see motion for counsel.

168.    The plaintiffs' are providing Judicial Notice: "a parent who is a party to the lawsuit and who has

the same interests as the child is a proper representative under Fed. R. Civ. P. 17(c). See generally T.W.

by Enk v. Brophy, 124 F.3d 893, 895-97 (7th Cir. 1997); see also In re Chicago, Rock Island & Pac.

R.R. Co., 788 F.2d 1280, 1282 (7th Cir. 1986)

## Prayer for Relief

169.    an order assigning counsel to represent the plaintiff in these proceedings

170.    WHEREFORE, Plaintiffs demand judgment against Defendants for the following:

171.  a judgment declaring that Defendants have violated Title II of the ADA, 42 U.S.C. §12131 *et seq.*, and its implementing regulation, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. §12181 *et seq.*, and its implementing regulation, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

172.  An order Enjoining Defendants, their officers, agents and employees, and all other persons in active concert or participation with Defendants, as well as any successors or assigns, from engaging in discriminatory policies and practices against individuals based on their disabilities, and specifically from failing or refusing to take appropriate steps to ensure compliance with the requirements of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

173.  An Order directing Defendants to modify their policies, practices, and procedures as necessary to bring them into compliance with Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

174.  An Order directing Defendants, their agents and successors in office, and all persons acting in concert with the Defendants to promptly remedy the demonstrated violations of Title II of the ADA and its implementing regulation, and mitigate harm to Plaintiffs;

175.  An order Terminating Defendants' federal financial assistance;

176.  An order assessing civil penalties against Defendants as authorized by 42 U.S.C. § 12188(b)(2)(C) to vindicate the public interest;

177.  An order directing reimbursement To Ms Brianne Stephens

178.  An order to award compensatory and punitive and damages to Plaintiffs; ~~$120,000.00~~ $16,000,000.00 per year, for 5 years 2014-2018 totaling ~~$600,000.00~~ $80,000,000.00 for ~~each~~

Plaintiffs from defendants. Order allowing Plaintiff Ms Brianne Stephens control of ALL monies at my discretion, tax free, and with no claw back or other interventions/intercepts on any dollar including IRS or any others. And trust set ups for minor children Plaintiffs TSS, DS, DGS with Plaintiff Ms Brianne Stephens, mother, as controller, owner of those trust funds, and how/when to disburse monies.

179.     To award Plaintiffs' attorney's fees and costs;

180.     .Injunctive relief a habeas to return child D S.

181.     Declaratory relief  court to declare all orders made, post-Parental Contract Agreement from 2014 to 2018 be void as they are legal nullities and this a void order can be challenged in any court.

182.     Order such other appropriate relief as the interests of justice require.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief

This the 8th day of May 2018

Submitted by,

Brianne Stephens
831 White Oak Lane
Matthews, NC 28104
980 475-5180
bsh566@aol.com

----------------------------------------X

   BRIANNE STEPHENS )   Case No. _3:18Cv 72 - RJC_
and those similarly situated )
       Plaintiffs, )
       )
     v. )
       )
STATE OF NORTH CAROLINA, ET AL. )
       )
     Defendants. )

----------------------------------------X

CASE FILED IN ASSOCIATION WITH

DISTRICT OF NEW JERSEY KAREN WOLF ET AL V STATE OF NEW JERSEY ET AL
2:2017-cv-02072

WESTERN DISTRICT OF OKLAHOMA COURT LISA KNIGHT ET AL V THE STATE OF
OKLAHOMA ET AL 17- cv 1250 (VML) (GP)

NORTHERN DISTRICT OF CALIFORNIA MELISSA BARNETT ET AL V THE STATE OF
CALIFORNIA ET AL 17-CV-05514 (SI)

NORTHERN DISTRICT OF CALIFORNIA FLORENCE BOYER ET AL V THE STATE OF
CALIFORNIA ET AL 17-CV- 06063 (YGR)

DISTRICT OF OREGON CORAL THEILL ET AL V THE STATE OF OREGON ET AL
3:17-CV-01722 (SFB)

DISTRICT OF OREGON DAVI SANCHEZ ET AL V THE STATE OF WASHINGTON ET AL
3:17-CV-01669 (SI)

DISTRICT OF OREGON DONJA BUNNEL V THE STATE OF OREGON ET AL 3:17 –CV-1786 (SI)

MIDDLE DISTRICT OF ALABAMA MIRANDA MITCHELL V THE STATE OF ALABAMA ET AL 2:17-CV-00768 (WC)

FEDERAL DISTRICT OF CONNECTICUT SUSAN SKIPP ET AL V THE STATE OF CONNECTICUT 3:17-CV-1974 (VB)

FEDERAL DISTRICT OF MASSACHUSETTS CAILIN JAMES ET AL V THE COMMONWEALTH OF MASSACHUSETTS ET AL # 17-CV-12346 (PBS)

NORTHERN DISTRICT OF CALIFORNIA KRISTINA KARKANEN ET AL V. STATE OF CALIFORNIA ET AL 17 CV-06967 (SK)

FEDERAL DISTRICT OF MASSACHUSETTS NIKKI PATTIN ET AL V THE COMMONWEALTH OF MASSACHUSETTS 1:17-CV-12469-PBS

FEDERAL DISTRICT COURT OF CONNECTICUT PAMELA D. EISENLOHR ET AL V THE STATE OF CONNECTICUT ET AL 3:17 CV 02174

Take Judicial Notice on Cases GENERAL COURT OF JUSTICE DISTRICT COURT DIVISION STEPHENS V SHAH 02CVD20573(GLH), 02CVD020573

This the 8th day of May 2018

Submitted By _____
Brianne Stephens
831 White Oak Lane
Matthews, NC 28104
bsh566@aol.com
980 475-5180 cell

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the document entitled **PLAINTIFFS AMENDED COMPLAINT** was ___deposited, a copy thereof, in the United States mail, postage prepaid, or _X_ e-mailed to interested parties as indicated:

kshields@ncdoj.gov for
NC, NC ATTORNEY GENERAL
JOSHUA STEIN,NC Courts, Martin,Henderson,
NC Superior CT

ADAM DOERR
adoerr@robinsonbradshaw.com
for CHS, BULLARD, CUTHBERTSON

ROBERT ADDEN, Esq
radden@rbcwb.com
for MCDSS,CP,Greene

CHRISTOPHER MILLER, Esq
cmiller@millerbowleslaw.com for Miller Bowles
Law Firm

BRETT HOLLADAY
bholladay@millerbowleslaw.com for
Brett Holladay

AnnRose JohnsonLewis, Esq
ajohnsonlewis@johnsonlewislaw.com for
AnnRose JohnsonLewis, JohnsonLewis Law
Firm

MICHELLE RIPPON Esq
mrippon@constangy.com
For AFCC, Salem

Angelia Duncan
angelia.duncan@bryancave.com For CFCR,
Simmons,Parker,Thies,Tutone, Williams,
Garafola,Zimmer, Leatherwood

Timothy Lehan
tlehan@smithlaw.com
For Curran, Healing, Tarner

This the 8th day of May 2018

by, _Brianne Stephens_
Brianne Stephens
831 White Oak lane
Matthews, NC 28104
bsh566@aol.com